**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

```
United States of America,        )
                                 )     CR-12-0583-TUC-DCB
          Plaintiff,             )
v.                               )
                                 )
Brigido Luna Zapien,             )     ORDER
                                 )
          Defendant.             )
                                 )
_____  )
```

This matter was referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B) and the local rules of practice of this Court for an evidentiary hearing and a Report and Recommendation (R&R) on the Defendant's Motions to Suppress. Before the Court is the Magistrate Judge's Report and Recommendation on the Defendant's Motions to Suppress. The Magistrate Judge recommends to the Court that the Motions to Suppress should be denied. The Defendant filed an Objection to this Recommendation and the Government filed a Response.

**OBJECTIONS**

Defendant generally objects to the recommendation to deny the "Motion to Suppress Statements Evidence for Fourth Amendment Violation" (Doc. 147). (Objection at 2.) Defendant did not file specific written objections to the R&R with reference to this motion.

Defendant specifically lodges objections to the recommendation to deny the "Motion to Suppress Statements and Evidence for *Miranda*[1] Violation and Involuntariness" (Doc. 148). (Objection at 2-7.) Defendant objects to the R&R's conclusion that the facts and evidence support a recommendation that no *Miranda* violation occurred. *United States v. Foster*, 227 F.3d 1096, 1103 (9th Cir. 2000). Defendant primarily questions the credibility of the testifying agents. Defendant alleges that Defendant unequivocally invoked his right to silence and to counsel, yet there was no cessation of the questioning at all. Defendant alleges that agents continued to question him, stating that he was required to answer their questions to complete a DEA form 202.

**STANDARD OF REVIEW**

When specific written timely objection is made to the findings and recommendation of a magistrate judge, the district court must conduct a de novo review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

**DISCUSSION**

Defendant Luna Zapien is charged with count 1, violations of 21:846, and count 2, violations of 21:841(a)(1) and 841(b)(1)(A)(vii), conspiracy to possess with intent to distribute methamphetamine and possession with intent to distribute methamphetamine.

The Magistrate Judge conducted an evidentiary hearing and heard the testimony of three witnesses: Special Agent (DEA) Sousa, Officer Navarrete (Town of Sahuarita Police Department), and TFO (DEA/Nogales Police Department) Ramirez.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

As to the *Miranda* issue, the R&R reads, in pertinent part:

> Because Agent Souza did not speak Spanish, TFO Ramirez, a Spanish speaker, initiated the questioning of Defendant Luna Zapien who did not speak English. ([*Tr.*] at pp. 135-36, 147; *see also id* at pp. 160-61 (TFO Ramirez "was getting questions from Agent Dorado [who spoke Spanish] and Agent Souza to ask the defendant.")). Prior to questioning, TFO Ramirez read to Defendant Luna Zapien his *Miranda* rights in Spanishfrom a plastic wallet card. (*Id.* at pp. 136-37). TFO Ramirez did not have a form for Defendant Luna Zapien to sign to indicate he waived his rights, nor did TFO Ramirez ask for such a form. (*Id.* at pp. 136, 160). Agent Souza testified that neither he nor Agent Dorado nor the other agents had the form DEA uses to advise of *Miranda* rights. (*Id.* at p. 76). After being informed of his *Miranda* rights, Defendant Luna Zapien indicated he understood his rights and that he was willing to speak with the officers without an attorney. (*Id.* at p. 137). When asked about his involvement in narcotics trafficking, Defendant Luna Zapien denied any involvement in the sale or purchasing of narcotics. (*Id.*). TFO Ramirez then informed Defendant Luna Zapien that "I had information and evidence that he was involved," and at that point Defendant Luna Zapien informed he would not answer further questions without the presence of an attorney and the interview was terminated. (*Id.* at p. 138). Defendant Luna Zapien invoked his right to counsel five minutes after questioning had begun. (*Id.* at pp. 82-83). At some point after Defendant Luna Zapien requested an attorney, TFO Ramirez stated that he "needed to get some biographical information" for DEA Form 202, which requires information such as name, birth date, residence, "his wife, parents...if he has kids." (*Id.* at pp. 138-39). About this exchange, TFO Ramirez testified as follows:
>
>   Q [Prosecutor:] Okay. And Did he voluntarily agree to do that?
>   A [TFO Ramirez:] Yes, sir.
>   Q Did you tell him he had to do that?
>   A Yes, sir.
>   Q You told him he had to give you biographical information–
>   A I told him–
>   Q –or you requested it?
>   A No, no. I requested the-biographical information, but I made sure I told him this–I wasn't going to ask him any questions about the case, about the evidence or nothing.
>   It was just questions that we needed...to fill out the form, nothing– (*Id.* at p. 139).
>
> On cross-examination, TFO Ramirez denied that he told Defendant Luna Zapien that "he had to answer those

3

>questions." (*Id.* at p. 165). Agent Souza indicated in his report that TFO Ramirez told Defendant Luna Zapien that he would be "required" to answer the biographical questions from DEA Form 202. (*Id.* at pp. 84, 86). TFO Ramirez testified that he asked Defendant Luna Zapien the biographical questions and, in turn, translated the answers to Agent Souza who recorded the information on DEA Form 202. (*Id.* at p. 163-64). TFO Ramirez testified on cross-examination that he already knew information from Defendant Luna Zapien's driver's license, including address, but he still asked such questions for DEA Form 202, because the information can change. (*Id.* at pp. 163-64, 166, 169). He also testified that he never fills out DEA Form 202 at the beginning of an interview. (*Id.* at p. 166). When questioned further about the DEA Form 202 on cross-examination, TFO Ramirez testified:
>
>>Q [Defense Counsel:] And you say that you asked him questions about who is wife was, how many children he had, what their names were, et cetera, et, cetera, correct?
>>A [TFO Ramirez:] Yes, sir.
>>Q And Agent Souza was filling that out on a DEA From 202[?]
>>A Yes, sir.  (*Id.* at p. 164).
>
>Although the DEA Form 202 submitted by the parties with their supplemental briefs provides space specifically for this family information, those spaces are blank on Defendant Luna Zapien's form. (*See* Doc. 156, Att. 5; Doc. 157, Exh. A). Though, other biographical information is recorded on the form. (*Id.*).

(R&R at 8-10.)

The Magistrate Judge went on to find, as follows:

>There is no dispute Defendant Luna Zapien invoked his right to counsel before making the statements at issue. The testimony supports the conclusion that there was no significant, if any, break between Defendant Luna Zapien's request for counsel and TFO Ramirez's commencement of questioning for purposes of DEA Form 202. Agent Souza testified that TFO Ramirez informed Defendant Luna Zapien that he was "required" to answer the biographical questions. TFO Ramirez's initial testimony is consistent with Agent Souza's recollection; however upon further questioning by the Government as to whether he told Defendant Luna Zapien that "he had to" provide the biographical information or whether TFO Ramirez "requested" he provide the information, TFO Ramirez revised his testimony to indicate that he "requested" that Defendant Luna Zapien answer the biographical questions. (*See* TR. at p. 139).

4

*  *  *

> Here, after Defendant Luna Zapien invoked his right to counsel, and prior to his reconsideration of the invocation, TFO Ramirez asked him only non-incriminating biographical questions. There is no indication that the words or actions used by TFO Ramirez or the other agents present were "such that the agents should have known that they would be reasonably likely to elicit an incriminating response from the defendant." *Hughes*, 921 F.Supp. at 658. Nor is there evidence that the questioning limited to DEA Form 202 elicited any incriminating response. Consequently, such questioning did not constitute "interrogation." *See id.* "Nor does the fact that the defendant asked...[for] an attorney prior to being asked biographical questions convert such questioning into impermissible interrogation." *Id. (citing Gladden v. Roach,* 864 F.2d 1196, 1198 (5th Cir. 1989) (finding that an arrested defendant who has invoked his *Miranda* rights does not have "an absolute right to remain silent" and may be asked biographical questions for booking purposes)).
>
> Contrary to Defendant Luna Zapien's assertion otherwise (*See* Doc. 148, p. 6), under the instant circumstances he was not subjected to further interrogation as contemplated by *Miranda* when he was asked biographical questions for purposes of completing DEA Form 202. *See id.* at 659 (*citing Edwards*, 451 U.S. 477).

(R&R at 14-16.)

The Magistrate Judge, necessarily finding that the agents had testified credibly, offered his final factual findings, as follows:

> The evidence presented is that Defendant Luna Zapien was properly advised of his rights in Spanish, his native language. There is no basis to conclude that Defendant Luna Zapien did not understand those rights, especially given that he initially invoked his right to counsel and questioning concerning narcotics trafficking ceased. Although TFO Ramirez then started asking biographical questions instead, such questioning did not constitute interrogation, *see* discussion *supra,* and TFO Ramirez testified that he told Defendant Luna Zapien that he was not going to ask "about the case, about the evidence....It was just questions that we needed...to fill out the form...." (TR. p. 139). Further, Defendant Luna Zapien was reminded of his rights when, after invoking his right to counsel, he later of his own volition told TFO Ramirez that he wanted to waive those rights and give a statement without the presence of an attorney regarding his narcotics trafficking

> activity. Moreover, TFO Ramirez also informed Defendant Luna Zapien that the officers did not want to ask him questions because he said he wanted an attorney. In sum, the record demonstrates that Defendant Luna Zapien waived his right to counsel given that after invoking his right to counsel, he evinced a willingness to talk about his narcotics trafficking activity, was reminded of his rights under *Miranda,* was informed of officers' reluctance to discuss the narcotics trafficking investigation in light of his request for counsel, stated that he understood those rights and that he wanted to now waive them to speak with TFO Ramirez without the presence of counsel.
>
> * * *
>
> The evidence of record negates any argument that Defendant Luna Zapien's waiver of his right to counsel and his subsequent statements were involuntary. Under the instant circumstances, the incriminating statements Defendant Luna Zapien made after he withdrew his request for counsel are admissible.

(R&R at 17-18.)

Defendant lists several reasons to doubt the credibility of the agents who testified during the evidentiary hearing: incredulity over the absence of a written *Miranda* advice form; questionable use of an interrogation room with no recording devices; continuing questioning after invocation despite training otherwise; and, dubious need for a complete DEA 202 History Form.  A district court cannot reject a magistrate judge's credibility determinations made in a magistrate judge's recommendation on a motion to suppress without conducting a *de novo*, live evidentiary hearing. *United States v. Bergera*, 512 F.2d 391, 392 (9th Cir. 1975). All of these concerns were addressed by the Magistrate Judge with no reason to question his credibility assessments.

In *Miranda,* 384 U.S. at 444, the Supreme Court held that, because of the inherently coercive nature of custodial interrogation, a person must be advised of his or her constitutional rights, including being advised prior to any questioning of the right to an attorney and the

6

right to remain silent. *Lujan v. Garcia*, ---F.3d--- , 2013 WL 5788761, *12 (9th Cir. 2013).  The words used by law enforcement here did reasonably convey to Defendant his *Miranda* rights and choices.  The record bears out that Defendant was lawfully arrested and held in custody. He was read and waived his *Miranda* rights prior to providing any statements to agents. The interview was started but once the Defendant requested an attorney, the interview was terminated. The Defendant reinitiated contact just minutes after being advised of his *Miranda* rights in Spanish. TFO Ramirez reminded the Defendant he had requested an attorney and therefore they would not question him regarding the narcotics transactions any further. The Defendant again stated he wanted to talk, whereupon TFO Ramirez reminded him of his rights in Spanish and the Defendant again conceded to understanding them, and knowingly and voluntarily waived those rights prior to providing a statement.  After a review of the evidentiary hearing transcript there is no basis for this Court to question the Magistrate Judge's factual findings, credibility determinations, or legal conclusions.

## CONCLUSION

Accordingly, after conducting a de novo review of the record,

**IT IS ORDERED** that the Court **ADOPTS** the Report and Recommendation (Doc. 170) in its entirety.  The Objections (Doc. 173) raised by the Defendant are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendant's Motions To Suppress (Docs. 147, 148) are **DENIED**.

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the Magistrate Judge's ruling (Doc. 170 at 20) denying without prejudice to re-filing within five days of the R&R the nondispositive pretrial discovery "Motion to

7

Compel Disclosure of Impeachment Evidence re: Confidential Informer".
(Doc. 150.)

    DATED this 6th day of November, 2013.

                                        David C. Bury
                                        United States District Judge